**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOSE MENDOZA and ROBERTO PRADO, individually and d/b/a THE SAFARI RESTAURANT, <br><br> Defendants. | Case No.: 1:14-cv-1361-JAM-BAM <br><br> **FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> (Doc. 14) |

**INTRODUCTION**

On March 4, 2015, J&J Sports Production, Inc. ("Plaintiff") filed the present motion for default judgment against Defendants Jose A. Mendoza and Robert Prado, individually and doing business as The Safari Restaurant ("Defendants"). (Doc. 14). On April 15, 2015, Plaintiff filed a request to continue the motion hearing to June 5, 2015, which the Court granted. (Docs. 16, 17). Defendants have not responded to the motion or otherwise appeared in this lawsuit. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for June 5, 2015. Having considered the moving papers, the briefing, and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and judgment entered in the amount of $22,600.00 against Defendants.

**BACKGROUND**

On August 28, 2014, J&J Sports Production, Inc. filed its complaint against Defendants, alleging violations of 47 U.S.C. § 605, *et seq*., and 47 U.S.C. § 553, *et seq*., as well as claims under California state law. Plaintiff claims that it was the exclusive commercial distributor of the program

1

"'*The One' Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program*" (the "Program"). Defendants unlawfully intercepted and broadcast the telecast of the Program on September 14, 2013 at The Safari Restaurant (the "Restaurant"). Plaintiff alleges that since Defendants operate the restaurant, a commercial establishment, and exhibited the Program there, Defendants could not have lawfully obtained the Program without contracting with Plaintiff. (Doc. 14 at 7). Defendants did not contract with Plaintiff, and thus must have wrongfully intercepted, received, and broadcasted the Program.

On February 4, 2015, after Defendants failed to file an answer, Plaintiff requested an entry of default against Defendants, which was entered by the clerk on that same day. (Docs. 12, 13). On March 4, 2015, Plaintiff filed the instant motion for default judgment. (Doc. 14). Plaintiff's motion requests that the Court enter default judgment against Defendants for damages in the amount of $47,600.00. Defendants have not appeared or otherwise defended this action.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (*citing Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. *Id.* at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*,

826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (*citing Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); *accord Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (*citing Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. *Geddes*, 559 F.2d at 560.order.

**DISCUSSION**

**1.     Adequacy of Service of Process**

Per Plaintiff, Defendant Jose A. Mendoza is an owner, and/or operator of the commercial establishment doing business as The Safari Restaurant operating at 337 West Tulare Street, Dinuba, California 93618. Compl. ¶ 7. Defendant Roberto Prado is also an owner, and/or operator doing business as The Safari Restaurant operating at 337 West Tulare Street, Dinuba, California 93618. Compl. ¶ 8. Defendants Mendoza and Prado are also the only individuals specifically identified on the California Alcoholic Beverage and Control license issued for The Safari Restaurant (ABC # 413603). Compl. ¶ 9, 10.

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of Plaintiff's Motion for Default Judgment. *See BR North 223, LLC v. Glieberman*, 2012 U.S. Dist. LEXIS 24288, **8-9 (E.D. Cal. Feb. 24, 2012). Under Fed. R. Civ. P 4(e), individuals such as Defendants may be served by:

(1)     following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)     doing any of the following:

3

  (A) delivering a copy of the summons and of the complaint to the individual personally; or

  (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

  (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

  Plaintiff contends that service of the summons and complaint in this action was made on Defendants by substitute service pursuant to federal law on December 17, 2014. (Docs. 6, 7). Plaintiff's proof of service states that process server David Kilgore of Rezerac Meyer Attorney Service served "Esmerelda Vasquez–Person in Charge" at 337 West Tulare Street Dinuba, CA 93618, the location of restaurant, at 10:30 a.m. According to the declaration of diligence, the process server attempted service on each individual defendant at the business address five times prior to substitute service. (Doc. 6 at 3). The following day, on December 18, 2014, Lorena Tamayo served the same documents via United States Mail to both "Robert Prado" and "Jose Mendoza," "individually and D/B/A The Safari Restaurant 337 West Tulare Street, Dinuba, CA 93618." (Docs. 6, 7 at 2). True and correct copies of the Proof of Service were filed with this Court on December 22, 2014. (Docs. 6, 7). See Cal.Code Civ. Proc. §415.20 (a defendant may be served at his place of business by delivering the summons and complaint to the person in charge and by mailing a copy of summons and complaint to the business.)

  Pursuant to the proof of service, Plaintiff effectuated service pursuant to Rule 4(e)(2)(B). Defendants are not infants, incompetent persons, or persons in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940. (Riley Decl., Doc. 14-2, ¶ 3). Accordingly, the Court finds that Plaintiff perfected service of the summons and complaint in this matter.

**2. Default Judgment**

  Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's application for default judgment. First, because default has been

entered, Plaintiff's factual allegations are accepted as true, except for those relating to the amount of damages. Second, if the motion were denied, Plaintiff would be without a remedy and would be prejudiced. Third, the amount of money at stake is moderate. Fourth, default was not the result of excusable neglect. The Defendants were properly served and have not appeared in this case. *See* (Docs. 6, 7). Lastly, while the policy favoring decisions on the merits inherently weighs strongly against awarding default judgment in every case, in the aggregate, this factor is outweighed in consideration of the other applicable factors that tip in favor of granting default judgment.

Accordingly, it is RECOMMENDED that Plaintiff's request for default judgment against Defendants be GRANTED.

**3.    Calculation of Damages**

Plaintiff requests $8,400 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $35,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). (Doc. 14-1 at 12-21). The Court may consider a number of factors in its determination of the amount of damages, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 at * 10-11 (E.D. Cal. Sept. 6, 2011) (*citing Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

**A.    Statutory Damages**

Plaintiff requests $8,400 in statutory damages as a result of the alleged violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels. (Doc. 14-1 at 12). More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'" *J & J Sports Prods., Inc. v. Ro*, No. 09-CV-02860, 2010 WL 668065 at *3 (N.D. Cal. Feb. 19, 2010) (quoting *J & J Sports Prods., Inc. v. Guzman*, No. 08-CV-05469, 2009 WL 1034218 at *2 (N.D. Cal. Apr. 16, 2009)). The statute provides statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

5

According to Plaintiff, Kreig Iniquez, Plaintiff's investigator, noted he "paid $20 to enter" the Restaurant on September 14, 2013. (Doc. 14-3 at 2). Mr. Iniquez observed the Program broadcast on four 32'' LCD screen televisions, and one 80'' "roll-down projection screen located on the south wall." *Id.* Mr. Iniquez counted 8 people, and estimated the capacity of the Restaurant was "approximately 120 people." *Id.*

Given these factors, the Court finds an award of the requested amount of $8,400, which is two times the cost of the sublicense, to be appropriate. *See, e.g., J & J Sports Prods. v. Corona*, 2013 U.S. Dist. LEXIS 96462 (E.D. Cal. July 10, 2013) (awarding $7,000 in damages where the defendant broadcast the program on two televisions, there was no premium for food or drink); *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

### B.   Enhanced Statutory Damages

Plaintiff also seeks enhanced statutory damages arguing that "particularly important to the calculation of enhanced statutory damages" here is the fact that "the Safari Restaurant required a $20.00 cover charge and advertised that the Program would be shown on its Facebook page." (Doc. 14 at 13). An award of enhanced damages is appropriate where the defendant imposes a cover charge or admission fee. *See, e.g., J & J Sports Prods. v. Cano*, 2013 U.S. Dist. LEXIS 67078 (E.D. Cal. May 10, 2013) (awarding enhanced damages where the patrons paid a cover charge); *Joe Hand Promotions, Inc. v. Burleson*, 2011 U.S. Dist. LEXIS 119191 (E.D. Cal. Oct. 14, 2011) (awarding $3,000 in enhanced damages where patrons were told they could either pay a [$5] cover charge to watch the fight or order a plate of 'all you can eat wings for $11.99'"); *J & J Sports Prods. v. Espinoza*, 2014 U.S. Dist. LEXIS 82518 (E.D. Cal. June 17, 2014) (declining to award enhanced damages where the investigator did not pay a cover charge and there was "no evidence of a repeat violation or additional egregious circumstances"). Because the facts presented to the Court establish that Defendant acted

6

willfully and for the purposes of financial gain by imposing a $20 cover charge and engaging in promotional advertising, the award of enhanced damages is appropriate.

Significantly, however, the requested amount of enhanced damages appears excessive. When determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.* Moreover, the Ninth Circuit encourages the entry of "a sanction that deters but does not destroy." *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009). Here, Mr. Iniquez estimated the capacity of the Restaurant to be 120 people, but it appears only 8 people were present at the beginning of the program. (Doc. 14-3 at 4). Considering the facts presented, the Court declines to recommend that Plaintiff's request for an award of statutory damages of $35,000 be awarded. Rather, an award of $10,000 in enhanced damages is appropriate. *See, e.g. Cano*, 2013 U.S. Dist. LEXIS 67078 (awarding $5,000 in enhanced damages where the patrons paid a $7 cover charge and the fight was broadcast on four television sets and one projector); *J&J Sports Prods. v. Mosley,* 2011 U.S. Dist. LEXIS 56220 (N.D. Cal. Apr. 13, 2011)(awarding $5,000 in enhanced damages where Defendant advertised the fight on a "grease board" outside the establishment but no cover was charged); *Garden City Boxing Club, Inc. v. Lan Thu Tran*, 2006 U.S. Dist. LEXIS 71116, 2006 WL 2691431, at *2 (N.D. Cal. Sept. 20, 2006) (awarding minimal statutory damages and $5,000 in enhancement damages when 40 persons were present and the defendant imposed a $10 cover charge). An award of $10,000 serves as a significant disincentive to Defendants and others to try to profit directly or indirectly from the pirating, but also recognizes the need for the award to be proportional to the violation.

**C. Damages for Conversion**

Plaintiff also seeks $4,200.00 in conversion damages, the value of the property at the time of the conversion. (Doc. 14-1 at 20). Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*,

7

133 Cal.App.4th 1572, 1581 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, the evidence supports the request for conversion damages. Plaintiff purchased the domestic commercial exhibition rights to the Program at issue, and thus had exclusive domestic distribution rights of the property at the time of the conversion. Defendant did not license the programming from Plaintiff, yet exhibited the Program in the Restaurant on September 14, 2013. The exhibition of the Program constituted Defendants' conversion by a wrongful act or disposition of property rights. Finally, the evidence submitted by Plaintiff shows the amount Plaintiff would charge for a sub-license fee for the Program. For an establishment with minimum seating for 100-200 people, similar in size to Defendants' establishment, the license fee would have been $4,200.00. (Doc. 14, Ex. 4). Thus, Plaintiff lost the license fee of $4,200.00. Accordingly, Plaintiff is entitled to damages for conversion in the amount of $4,200.00.

### D.    Attorney's Fees and Costs

Costs and reasonable attorney's fees are recoverable under 47 U.S.C. § 605(e)(3)(B)(iii). In Plaintiff's prayer for relief in the complaint, Plaintiff seeks an award of costs and attorneys' fees pursuant to 47 U.S.C. § 605. Compl.¶ 44. However, the motion for default judgment and the supporting documents do not contain any argument or documentation in support of such a request. Accordingly, because the record provides no basis for determining a reasonable award, the Court recommends that Plaintiff's prayer for attorneys' fees and costs be denied without prejudice to renewal accompanied by appropriate documentation to support the request for reasonable attorneys' fees and costs.

**RECOMMENDATIONS**

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court **RECOMMENDS** as follows:

1. Plaintiff's motion for default judgment be GRANTED;
2. Judgment be entered in this action against Defendant Jose A. Mendoza and Defendant Robert Prado, individually and doing business as The Safari Restaurant, with joint and several liability; and
3. Damages in the amount of $22,600.00 be awarded as follows:
   a. For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $8,400.00;
   b. For the violation of 47 U.S.C. § 605(e)(3)(c)(ii), the sum of $10,000;
   c. For the conversion of Plaintiff's property, the sum of $4,200.00.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 20, 2015**           /s/ Barbara A. McAuliffe
                                     UNITED STATES MAGISTRATE JUDGE